## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JANE WILLIAMS, Individually and for
Others Similarly Situated

v.

MCLAREN OAKLAND and
MCLAREN HEALTH CARE
CORPORATION

**Case No.**

Jury Trial Demanded

FLSA Collective Action
Pursuant to 29 U.S.C. § 216(b)

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Jane Williams ("Williams") brings this collective action to recover unpaid overtime and other damages from McLaren Oakland ("Oakland") and McLaren Health Care Corporation ("McLaren") (together "Defendants").

2.      McLaren and Oakland jointly employed Williams as a Registered Nurse at McLaren's Oakland facility.

3.      Like the Putative Class Members (as defined below), Williams regularly worked more than 40 hours a workweek.

4.      But Defendants do not pay these employees for all the hours they work.

5.      Instead, Defendants automatically deduct 30 minutes a day from these employees' work time for so-called "meal breaks."

6.      Williams and the Putative Class Members are thus not paid for this time.

7.      But Defendants fail to provide Williams and the Putative Class Members

with *bona fide* meal breaks.

8.      And Williams and the Putative Class Members do not actually receive *bona fide* meal breaks.

9.      Instead, Defendants require Williams and the Putative Class Members to remain on-duty and performing compensable work throughout their shifts and continuously subject them to interruptions during their unpaid "meal breaks."

10.     Defendants' automatic meal break deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Williams and the Putative Class Members of overtime pay for hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has general personal jurisdiction over Oakland because it is a domestic corporation headquartered in Pontiac, Michigan.

13.     This Court has general personal jurisdiction over McLaren because McLaren is a domestic corporation headquartered in Grand Blanc, Michigan.

14.     Venue is proper because Defendants both reside in Michigan, and McLaren maintains its headquarters in Grand Blanc, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

15.     Williams worked for Defendants from approximately March 2023 until

- 2 -

September 2023 as a Registered Nurse at McLaren's Oakland facility.

16.     Throughout her employment, Defendants have jointly classified Williams as non-exempt and paid her on an hourly basis.

17.     Throughout her employment, Defendants have subjected Williams to their common practice of automatically deducting 30 minutes a workday from her recorded work time for so-called "meal breaks."

18.     But throughout her employment, Defendants have failed to provide Williams with *bona fide* meal breaks.

19.     And throughout her employment, Williams has not actually received *bona fide* meal breaks.

20.     Williams's written consent for McLaren is attached as **Exhibit 1**.

21.     Williams's written consent for Oakland is attached as **Exhibit 2**.

22.     Williams brings this action on behalf of herself and other similarly situated hourly, non-exempt employees who have worked for Defendants at the Oakland facility and were subject to Defendants' automatic meal break deduction policy.

23.     Defendants automatically deduct 30 minutes per shift from these employees' recorded work time for so-called "meal breaks."

24.     But Defendants uniformly require these employees to remain on-duty and performing compensable work throughout their shifts, including during their unpaid

"meal breaks."

25.     Thus, Defendants uniformly deprive these employees of overtime pay for hours worked in excess of 40 each workweek, in violation of the FLSA.

26.     The Putative Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees, who worked for, or on behalf of, McLaren and Oakland at the Oakland facility, who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Collective").**

27.     McLaren is a Michigan non-profit corporation that maintains its headquarters in Grand Blanc, Michigan.

28.     McLaren may be served with process by serving its registered agent: **Philip A. Incarnati, One McLaren Parkway, Grand Blanc, Michigan 48439**, or wherever he may be found.

29.     Oakland is a Michigan non-profit corporation that maintains its headquarters in Pontiac, Michigan.

30.     Oakland may be served with process by serving its registered agent: **Tracey Franovich, 50 N Perry St, Pontiac, Michigan 48342**, or wherever she may be found.

## COVERAGE UNDER THE FLSA

31.     At all relevant times, McLaren was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32.     At all relevant times, Oakland was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33.     At all relevant times, McLaren, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

34.     At all relevant times, Oakland, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

35.     At all relevant times, McLaren was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because McLaren, as a hospital network, is engaged in the operation of hospitals and an institution primarily engaged in providing healthcare services.

36.     At all relevant times, Oakland was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Oakland, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

37.     At all relevant times, McLaren has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38.     At all relevant times, Oakland has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39.     At all relevant times, Defendants jointly employed Williams and the Putative Class Members as "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

40.     At all relevant times, Williams and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

41.     Defendants uniformly deduct 30 minutes a shift from Williams's and the Putative Class Members' wages for "meal breaks," even when these employees do not actually receive a *bona fide*, uninterrupted meal break.

42.     As a result, Defendants fail to pay Williams and the Putative Class Members for compensable work hours, including overtime hours, in violation of the FLSA.

43.     Defendants' automatic meal break deduction policy, which deprives Williams and the Putative Class Members of overtime compensation for the weeks in which these employees work in excess of 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

44.     McLaren bills itself as "a $6.6 billion, fully integrated health care delivery system . . . [that] includes 13 hospitals in Michigan, ambulatory surgery centers, imaging

centers, a 490-member employed primary and specialty care physician network."[1]

45.     Indeed, McLaren provides services across Michigan, which are all a part

of its McLaren network:



[2]

_____

[1] https://www.mclaren.org/ (last accessed June 21, 2024).
[2] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 21, 2024).

46. "McLaren Oakland is a 318-bed hospital that provides primary and specialty healthcare services to the greater Pontiac and Oakland County, Michigan communities."[3]

47. McLaren and Oakland have common ownership and/or management.

48. For example, Dave Mazurkiewicz is Oakland's Treasurer, as well as the Executive Vice President and Chief Financial Officer of McLaren, a member of McLaren Flint's Board of Trustees, McLaren Health Plan's Board of Directors, McLaren Health Plan Community's Board of Directors, MDwise's Board of Directors, McLaren Integrated HMO Group's Board of Directors, McLaren Health Management Group's Board of Directors, McLaren Medical Group's Board of Directors, and McLaren High Performance Network's Board of Managers. **Exhibit 3** (McLaren Health Care Conversations, 2023 Annual Report) at 15; **Exhibit 4** (McLaren Oakland LARA).

49. Chad Grant serves on Oakland's Board of Trustees, as well as McLaren Bay Region's Board of Directors, McLaren Caro Region's Board of Trustees, McLaren Central Michigan's Board of Directors, McLaren Flint's Board of Trustees, McLaren Lapeer's Board of Trustees, McLaren Macomb's Board of Trustees, McLaren Medical Group's Board of Directors, McLaren Northern Michigan's Board of Trustees,

---

[3] https://www.mclaren.org/oakland/mclaren-oakland-home (last accessed June 21, 2024).

McLaren Greater Lansing's Board of Trustees, McLaren Port Huron's Board of Trustees, McLaren Thumb Region's Board of Directors, McLaren Physician Partners Board of Directors, and the Executive Vice President and Chief Operating Officer of McLaren Health Care. **Exhibit 3** at 15-16.

50.     The Honorable Leo Bowman serves on McLaren Health Care's Board of Directors, as well as Oakland's Board of Trustees.

51.     Likewise, McLaren and Oakland have shared and/or centralized human resources functions.

52.     For example, Laura Gibbard serves as Regional Vice President, Human Resources for Oakland, as well as for McLaren's Macomb and Port Huron facilities. **Exhibit 3** at 17.

53.     And McLaren maintains centralized control of recruiting and hiring at all McLaren facilities, including the Oakland facility. *See* **Ex. 3** at 3, 7, 11.

54.     Thus, to work at any McLaren facility, including the Oakland facility, Williams and the Putative Class Members must apply though McLaren.[4]

55.     McLaren and Oakland also have shared business operations.

56.     For example, McLaren utilizes a system-wide appointment scheduling system across Oakland and other McLaren facilities. *See* **Ex. 3** at 12.

---

[4] https://careers.mclaren.org/ (last accessed June 21, 2024).

57.     Likewise, McLaren has centralized its staffing operations and digitized the McLaren data systems for staff across its healthcare network, including employees working at the Oakland facility like Williams and the Putative Class Members. *See* **Ex. 3** at 4.

58.     Indeed, McLaren touts that its "entire complement of employees across the system stepped up to do their part in reducing expenses corporatewide." **Ex. 3** at 5.

59.     McLaren's Operations Statistics show data across the entire McLaren universe, and it does not limit its standardization based on facility. [5]

60.     To complete their shared business objectives, McLaren and Oakland jointly employ patient care workers, including Williams and the Putative Class Members, to provide patient care services and treat patients in McLaren's Oakland facility.

61.     McLaren hires and treats these employees just like regular employees.

62.     McLaren, jointly with Oakland, controls all meaningful aspects of these patient care employees' employment.

63.     McLaren and Oakland jointly control Williams's and the Putative Class Members' rates and methods of pay.

64.     McLaren and Oakland jointly control Williams's and the Putative Class

―――――――――――――

[5] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 21, 2024).

Members' schedules and assignments.

65.    McLaren and Oakland jointly control Williams's and the Putative Class Members' patient care work.

66.    McLaren and Oakland jointly require Williams and the Putative Class Members to follow McLaren's and Oakland's policies, procedures, and protocols.

67.    Williams's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by McLaren and Oakland.

68.    Indeed, upon hire, McLaren and Oakland jointly require all the patient care employees who work in the Oakland facility, including Williams and the Putative Class Members, to complete trainings on McLaren's uniform policies, procedures, and protocols to ensure their work conforms to the same.

69.    McLaren and Oakland prohibit Williams and the Putative Class Members from varying their job duties outside of the predetermined parameters and require Williams and the Putative Class Members to follow McLaren's and Oakland's policies, procedures, and directives.

70.    McLaren and Oakland jointly prohibit Williams and Putative Class Members from straying from McLaren's and Oakland's procedures, plans, protocols, and specifications.

71.    McLaren enforces the same employee expectations for all its employees,

regardless of what McLaren facility they are assigned.[6]

72.     Without the patient care work Williams and the Putative Class Members perform, McLaren and Oakland would not be able to complete their common business objective of providing healthcare services to patients in McLaren's Oakland facility.

73.     Thus, Williams's and the Putative Class Members' work is integral to, and simultaneously benefits, McLaren's and Oakland's shared business objectives.

74.     Williams and the Putative Class Members rely on McLaren and Oakland for work and compensation.

75.     Williams and the Putative Class Members do not substantially invest in the tools required to complete the overall job they are assigned.

76.     Rather, McLaren and Oakland incur large-scale business and operating expenses like marketing, payroll, equipment, tools, healthcare facilities, and materials.

77.     At all relevant times, McLaren and Oakland jointly maintained control, oversight, and direction of Williams and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

78.     At all relevant times, McLaren and Oakland jointly possessed the authority to hire, fire, and discipline Williams and the Putative Class Members.

79.     At all relevant times, McLaren and Oakland jointly supervised and

---

[6] https://www.mclaren.org/main/what-we-expect-from-our-employees (last accessed June 21, 2024).

controlled Williams's and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

80.     At all relevant times, McLaren and Oakland jointly maintained employment records for Williams and the Putative Class Members.

81.     In sum, at all relevant times, McLaren and Oakland have jointly employed Williams and the Putative Class Members.

82.     McLaren and Oakland jointly classify these patient care employees working at McLaren's Oakland facility, including Williams and the Putative Class Members, as non-exempt from overtime and uniformly pay them on an hourly basis.

83.     For example, McLaren and Oakland jointly employed Williams as a Registered Nurse from approximately March 2023 until September 2023 at McLaren's Oakland facility.

84.     As a Registered Nurse, Williams worked in Oakland's oncology unit and her primary responsibilities included admitting patients, administering medication, placing IVs, overseeing technicians, monitoring patients and responding to their needs, checking patients' vitals, and administering radiological care.

85.     Throughout her employment, Defendants have jointly subjected Williams to Defendants' common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for "meal breaks," regardless of whether she actually received a *bona fide* meal break.

86.     But throughout her employment, Williams has not actually received *bona fide* meal breaks.

87.     Williams and the Putative Class Members perform their jobs under Defendants' joint supervision, and using materials, equipment, and technology approved and supplied by Defendants.

88.     Defendants jointly require Williams and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

89.     At the end of each pay period, Williams and the Putative Class Members receive wages from Oakland that are determined by common systems and methods that McLaren and Oakland jointly select and control.

90.     Defendants jointly require their hourly, non-exempt patient care employees, including Williams and the Putative Class Members, to record their hours worked using Defendants' timeclock system (Kronos).

91.     Further, Defendants subject their hourly, non-exempt patient care employees working at the Oakland facility, including Williams and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for "meal periods" each shift.

92.     Specifically, Defendants automatically deduct 30 minutes from Williams's and the Putative Class Members' recorded time worked each shift for "meal periods,"

regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

93.     But Defendants fail to provide Williams and the Putative Class Members with *bona fide* meal periods.

94.     And Williams and the Putative Class Members do not actually receive *bona fide* meal breaks.

95.     Instead, Defendants require Williams and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject them to work interruptions during their unpaid "meal periods."

96.     Indeed, because of these constant work interruptions, Williams and the Putative Class Members are not free to engage in personal activities during their unpaid "meal periods."

97.     Rather, during their unpaid "meal breaks," Williams and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

98.     Thus, Williams and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants' – not these employees' – shared predominant benefit.

99.     This unpaid time is compensable under the FLSA because Defendants

knew, or should have known, that (1) Williams and the Putative Class Members were performing unpaid compensable work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, (4) the meal period was less than 30 consecutive minutes, (5) they were not free to engage in personal activities during their meal periods because of constant interruptions, (6) they remained on Defendants' premises, and/or (7) they predominantly spent their unpaid meal periods performing their regular patient care duties for Defendants' shared predominant benefit.

100. Defendants jointly failed to exercise their shared duty to ensure Williams and the Putative Class Members were not performing work that Defendants did not want performed during their unpaid "meal breaks."

101. Despite accepting the benefits, Defendants did not pay Williams and the Putative Class Members for the compensable work they performed during their "meal breaks."

102. Defendants know Williams and the Putative Class Members routinely perform work "off the clock" during their unpaid "meal breaks" because Defendants expect and require these employees to do so.

103. But Defendants do not pay Williams and the Putative Class Members for their routine "off the clock" meal break work, including those hours worked in excess

of 40 a workweek, in violation of the FLSA.

104.   Williams worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

105.   Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

106.   And Williams and the Putative Class Members are also regularly required to work during their unpaid "meal breaks" "off the clock" in order to complete their job duties and patient care responsibilities.

107.   As a result, Williams and the Putative Class Members work in excess of 40 hours in a typical workweek.

108.   When Williams and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Defendants' failure to include time these employees work during their unpaid "meal breaks" in their total number of hours worked in a given workweek.

109.   Thus, under Defendants' uniform, automatic meal break deduction policy, Williams and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

110.    Williams realleges and incorporates all other paragraphs by reference.

111.    Williams brings her FLSA claims as a collective action on behalf of herself and the Putative Class Members pursuant to Section 216(b) of the FLSA.

112.    The Putative Class Members are victimized by Defendants' pattern, practice, and/or policy of automatically deducting compensable work time from their wages for so-called "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

113.    Other Putative Class Members work with Williams and indicate they are paid in the same manner, perform similar work, and are subject to Defendants' same automatic meal break deduction policy.

114.    Based on her experiences with Defendants, Williams is aware Defendants' illegal practices are imposed on the Putative Class Members.

115.    The Putative Class Members are similarly situated in all relevant respects.

116.    Even if their precise job duties might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime.

117.    Therefore, the specific job titles or precise job locations of the various members of the Putative Collective do not prevent collective treatment.

118.    Rather, the Putative Collective is held together by Defendants' uniform automatic meal break deduction policy that systematically deprives Williams and the

Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

119.   The Putative Class Members are similarly denied overtime pay when they work more than 40 hours in a week.

120.   The overtime owed to Williams and the Putative Class Members can be calculated using the same records and using the same formula.

121.   Williams's experiences are therefore typical of the experiences of the Putative Class Members.

122.   Williams has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

123.   Like each Putative Class Member, Williams has an interest in obtaining the unpaid overtime wages owed under federal law.

124.   A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

125.   Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

126.   Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

127.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members.

128.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

129.    Among the common questions of law and fact are:

    a.    Whether McLaren and Oakland jointly employed Williams and the Putative Class Members;

    b.    Whether Defendants engaged in a policy and practice of automatic time deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted, in violation of the FLSA;

    c.    Whether Defendants' automatic meal break deduction policy deprived Williams and the Putative Class Members of pay for time worked during "meal periods" that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    d.    Whether Defendants failed to pay Williams and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

    e.    Whether Defendants knew, or had reason to know, Williams and the Putative Class Members were requested, suffered, permitted,

or allowed to work during their unpaid meal breaks in violation of the FLSA;

    f.    Whether Defendants' decision not to pay Williams and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

    g.    Whether Defendants' violations of the FLSA were willful.

130.    Williams and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

131.    Williams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

132.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

133.    Therefore, the issue of damages does not preclude collective treatment.

134.    Defendants are jointly liable under the FLSA for failing to pay overtime to Williams and the Putative Class Members.

135.    Consistent with Defendants' illegal automatic meal break deduction policy, Williams and the Putative Class Members are not paid overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

136.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Williams and the Putative Class Members.

137.    Defendants' illegal automatic meal break deduction policy deprives Williams and the Putative Class Members of the premium overtime wages they are owed under federal law.

138.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

139.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

140.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

141.    In fact, because McLaren has centralized its staffing operations and digitized data systems for staff across its network, employee records for the Putative Class Members are readily available through McLaren's centralized data network.

### DEFENDANTS' VIOLATIONS OF THE FLSA WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

142.    Williams realleges and incorporates all other paragraphs by reference.

143.    Defendants knew they jointly employ the patient care employees that work at McLaren's Oakland facility, including Williams and the Putative Class Members.

144.    Defendants knew Williams and the Putative Class Members are non-exempt employees entitled to overtime because Defendants uniformly classified and paid them as such.

145.    Defendants knew Williams and the Putative Class Members are paid on an hourly basis because Defendants jointly dictated and controlled the same.

146.    Defendants knew Williams and the Putative Class Members work more than 40 hours in at least one workweek during the last 3 years because Defendants jointly required these employees to record their hours worked using Defendants' timeclock system.

147.    Defendants knew they are subject to the FLSA, including its overtime provisions.

148.    Defendants knew the FLSA requires them to pay employees, including Williams and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours a workweek.

149.    Defendants knew the FLSA requires them to pay Williams and the Putative Class Members for all hours these employees perform compensable work.

150.    Defendants knew they fail to provide Williams and the Putative Class Members with *bona fide* meal breaks.

151.    Defendants knew Williams and the Putative Class Members regularly work

during their unpaid "meal breaks" because Defendants expect and require them to do so.

152.   Defendants knew Williams and the Putative Class Members regularly spend their "meal breaks" substantially performing their normal patient care job duties for Defendants' common predominant benefit.

153.   Defendants knew that, as Williams's and the Putative Class Members' employers, they had a duty to ensure these employees are not performing work that Defendants do not want performed during their unpaid "meal breaks."

154.   Defendants knew Williams and the Putative Class Members perform compensable work during their unpaid "meal breaks."

155.   Defendants knew they automatically deduct 30 minutes per shift from Williams's and the Putative Class Members' recorded work time for "meal breaks."

156.   Defendants knew they automatically deduct 30 minutes per shift from Williams's and the Putative Class Members' recorded work time for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

157.   Defendants knew Williams and the Putative Class Members do not receive *bona fide* meal breaks.

158.   Defendants knew they do not pay Williams and the Putative Class Members for all hours these employees performed compensable work, including the compensable work they performed during their unpaid "meal breaks."

159.   Thus, Defendants knew, or should have known, that they failed to pay Williams and the Putative Class Members overtime wages for all overtime hours worked, in violation of the FLSA.

160.   Defendants' failure to pay Williams and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

161.   Indeed, McLaren and its affiliated entities have been sued previously by employees for failing to pay overtime wages for all overtime hours worked, including for automatically deducting compensable work time for meal breaks. *See*, *e.g.*, *Brown v. McLaren Health Care Corp., et al.*, No. 3:24-cv-11592-JEL-APP (E.D. Mich.); *Gloss v. McLaren Health Care Corp., et al.*, No. 1:24-cv-11526-TLL-PTM (E.D. Mich.); *Hart v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.); *Crane, et al. v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.).

162.   Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal automatic meal break deduction policy that deprives Williams and the Putative Class Members of overtime compensation for all overtime hours worked in willful violation of the FLSA.

### CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA

163.   Williams realleges and incorporates all other paragraphs by reference.

164.   Williams brings her FLSA claims as a collective action on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

165.   Defendants violated, and are violating, the FLSA by failing to pay Williams and the Putative Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

166.   Throughout the relevant period, Defendants automatically deducted 30 minutes per shift from Williams's and the Putative Class Members' recorded work time for so-called "meal breaks."

167.   But throughout the relevant period, Williams and the Putative Class Members did not actually receive *bona fide* meal breaks.

168.   Instead, throughout the relevant period, Defendants expected and required Williams and the Putative Class Members to remain on duty and perform compensable work during their unpaid "meal breaks."

169.   Williams and the Putative Class Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work that they performed and from which Defendants derived a direct and substantial benefit.

170.   Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal pattern and practice of failing to pay Williams and the Putative Class

Members overtime compensation for all overtime hours worked.

171. Defendants' failure to pay Williams and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

172. Accordingly, Williams and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## JURY DEMAND

173. Williams demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Williams, individually and on behalf of the Putative Class Members, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly liable for unpaid back wages due to Williams

and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

c.    Judgment awarding Williams and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d.    An Order awarding attorneys' fees, costs, and expenses;

e.    Pre- and post-judgment interest at the highest applicable rates; and

f.    Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Jennifer McManus*
**Jennifer L. McManus (P65976)**
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 24122166
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

obeale@mybackwages.com

**Richard J. (Rex) Burch\***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR WILLIAMS AND THE PUTATIVE CLASS MEMBERS**

Dated:  June 25, 2024